# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **W&W STEEL, LLC,** | ) |
| | ) |
|     Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| **BSC STEEL, INC.,** | ) |
| | ) |
|     Defendant/Counterclaim Plaintiff/ | ) |
|     Third-Party Plaintiff, | ) |
| | ) |
|     and | )   **Case No. 11-2613-RDR** |
| | ) |
| **JAY D. PATEL,** | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| **MARCUS SALAZAR, d/b/a MATERIALS** | ) |
| **MANAGEMENT, INC. d/b/a MMI;** | ) |
| **MORTGAGE MANAGEMENT, INC. d/b/a** | ) |
| **MARTIALS MANAGEMENT, INC. a/k/a** | ) |
| **MMI; and LIBERTY MUTUAL INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
|     Third-Party Defendants. | ) |

## MEMORANDUM AND ORDER

This action is presently before the court upon the following motions: third-party defendant Materials Management, Inc.'s motion to dismiss BSC Steel, Inc.'s third-party complaint; and (2) plaintiff/counterclaim defendant W&W Steel, LLC and third-party defendant Liberty Mutual Insurance Company's motion to dismiss BSC Steel, LLC's second amended counterclaim Counts I, II, IV, V, VI, VII, VIII, IX, X and XI. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

## I.

This case arises out of the construction of the Irwin Army Community Hospital located on Fort Riley, Kansas. Balfour-Walton Joint Venture (BWJV) served as the general contractor on the project. BWJV subcontracted a portion of the work to W & W Steel, LLC. W&W agreed to perform the steel erection of the general contract work on the project. W&W then subcontracted some of its work to Materials Management, Inc. (MMI). MMI then entered into a contract with BSC Steel, LLC for the steel erection. Liberty Mutual Insurance Company issued a payment bond in connection with the subcontract between Balfour-Walton and W&W.

W&W filed its complaint in this case on November 8, 2011 against BSC and Jay Patel. BSC and Patel filed its answer on January 13, 2012. Along with its answer, BSC also filed a counterclaim against W&W and third-party claims against Marcus Salazar, MMI and Liberty Mutual. W&W and Liberty Mutual filed a motion to dismiss on February 24, 2012. Salazar and MMI each filed a motion to dismiss on March 30, 2012. MMI also filed its answer on March 30, 2012. On April 6, 2012, BSC sought to amend its counterclaims and third-party complaint. On May 18, 2012, Magistrate Judge Sebelius granted in part and denied in part BSC's motion to amend. BSC eventually filed an amended answer with amended counterclaims and amended third-party complaint on June 12, 2012. MMI, W&W and Liberty Mutual filed the instant motions to dismiss on June 26, 2012. On December 17, 2012,

the court denied the earlier motions to dismiss filed by MMI, W&W and Liberty Mutual. In that order, the court noted that it would consider the arguments raised by MMI in that motion on Counts I, VIII and IX in determining MMI's later filed motion to dismiss.

## II.

The amended counterclaims and amended third-party complaint filed by BSC contain eleven counts. The eleven counts are as follows: (I) Alter Ego--counterclaim against W&W and a third-party claim against MMI; (II) Breach of Contract as Third-Party Beneficiary--counterclaim against W&W; (III) Breach of Contract--third-party claim against MMI; (IV) Negligent Misrepresentation--counterclaim against W&W and third-party claim against MMI; (V) Quantum Meruit/Unjust Enrichment--counterclaim against W&W; (VI) Promissory Estoppel--counterclaim against W&W; (VII) Suit on Bond--third-party claim against Liberty Mutual; (VIII) Kansas Fairness in Public Construction Contract Act--counterclaim against W&W and third-party claims against MMI and Liberty Mutual; (IX) Federal Prompt Payment Act--counterclaim against W&W and third-party claims against MMI and Liberty Mutual; (X) Fraudulent Misrepresentation--counterclaim against W&W; and (XI) Kansas Fairness in Private Construction Contract Act--counterclaim against W&W and third-party claims against MMI and Liberty Mutual.

In its motion to dismiss, MMI contends that Counts IV and XI

of BSC's amended third-party complaint should be dismissed for failure to state a claim upon which relief can be granted. MMI further argues that Counts I, VIII and IX of BSC's original complaint should also be dismissed for failure to state a claim upon which relief can be granted.

W&W and Liberty Mutual seek to dismiss most of the claims asserted by BSC. They contend that Counts I, II, IV, V, VI, VII, VIII, IX, X and XI fail to state claims upon which relief can be granted. W&W and Liberty Mutual raise essentially the same arguments as those asserted by MMI concerning Counts I, IV, VIII, IX and XI. The court will address those arguments with the contentions asserted by MMI. W&W and Liberty Mutual contend that BSC's claim of quantum meruit and unjust enrichment in Count V must be dismissed because BSC has failed to allege that it expected to get paid by W&W. W&W and Liberty Mutual further contend that BSC's claim of promissory estoppel in Count VI must be dismissed because the oral promises alleged do not constitute a valid and enforceable contract. Liberty Mutual then argues BSC's claim based upon the payment bond in Count VII must be dismissed because BSC has failed to state a claim against W&W. Thus, since none of the claims in the second amended counterclaims state a claim against W&W, then BSC cannot assert a claim of derivative liability against it. Lastly, W&W and Liberty Mutual contend that BSC's claim of fraudulent

misrepresentations in Count X must be dismissed because BSC has failed to meet the pleading requirements of Fed.R.Civ.P. 9(b).

III.

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive. Neitzke v. Williams, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. Bell Atlantic, 550 U.S. at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, id. at 556, and view all reasonable inferences from those facts in favor of the plaintiff, Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

5

IV.

A. Count I

In Count I of its second amended counterclaims against W&W, BSC alleges that W&W is the alter ego of MMI with regard to the contract that BSC entered into with MMI.  Therefore, BSC asserts that (1) the MMI corporate form should be disregarded; (2) the MMI-BSC subcontract should be disregarded and collapsed into the W&W-MMI contract; and (3) BSC should be deemed the subcontractor of that W&W-MMI contract.

MMI contends that BSC has failed to allege sufficient facts that would support the legal conclusion that MMI is the alter ego of W&W. MMI argues that BSC has failed to allege facts showing that MMI and W&W were functioning as "a single entity."  Specifically, MMI points out that BSC has not alleged that MMI shares officers, office space, or other resources with W&W.  They further note that BSC has not alleged any of the traditional indica of alter ego status such as common ownership, common control, financial dependence, undercapi-talization, shared payment of losses, salaries and expenses, the absence of an independent business existence, and the absence of independently owned assets.

W&W argues that BSC has failed to allege the necessary factors for the application of the alter ego theory.  W&W suggests that close project oversight by W&W of BSC and MMI does not suffice to trigger the alter ego doctrine so that a party's corporate form can be

6

disregarded.  W&W also contends that BSC has failed to alleged that it suffered any specific harm or injustice from the alleged domination of MMI by W&W.

BSC contends that facts alleged in the complaint are sufficient for the court to find that it is plausible that MMI is the alter ego of W&W.  BSC points to the following alleged facts:  (1) MMI is not a corporate entity but rather a trade name under which Marcus Salazar and/or Mortgage Management, Inc. does business; (2) MMI was an undercapitalized entity that W&W used and controlled to enter into a subcontract with BSC; (3) MMI did not have sufficient funds or resources to carry out the terms of the MMI-BSC subcontract; (4) W&W performed all of MMI's responsibilities under the subcontract including negotiating with BSC on the scope or price of the work, scheduling and managing BSC's work, discussing with BSC the design deficiencies or others, receiving and reviewing BSC's daily logs and reports, reviewing and submitting BSC's pay applications to BWJV, paying BSC directly, and communicating with BWJV regarding all aspects of the steel fabrication and erection at the project.  BSC suggests that W&W used MMI as a facade for W&W's operations because it needed the services of a company that could be reported as a minority-owned business.  BSC suggests that MMI was used by W&W to promote injustice and fraud upon it, suggesting that W&W now seeks to use the MMI-BSC subcontract as a sword for recovery from BSC while

simultaneously using the MMI-BSC subcontract as shield to insulate

W&W from BSC's claim for payment it is owed.  BSC argues that the key

factor is the level of control evidenced by the actual relationship

of the parties and the mere existence or nonexistence of formal stock

ownership is not necessarily conclusive.

The concept that one corporation can be found to be the alter

ego of another corporation is well-settled in Kansas law:

> The fiction of separate corporate identities of two
> corporations will not be extended to permit one of the
> corporations to evade its just obligations; to promote
> fraud, illegality, or injustice; or to defend crime. Under
> circumstances where the corporate entity is disregarded,
> the parent corporation may be held liable for the acts of
> the subsidiary.... The courts will disregard the fiction
> of a separate legal entity when there is such domination
> of finances, policy, and practices that the controlled
> corporation has no separate mind, will, or existence of
> its own and is but a business conduit for its principal.

Dean Operations, Inc. v. One Seventy Assocs., 257 Kan. 676, 896 P.2d

1012, 1016 (1995).

In determining alter ego status, ten factors have identified

as useful guidelines:

> (1) whether the parent corporation owns all or a majority
> of the capital stock of the subsidiary; (2) whether the
> corporations have common directors or officers; (3)
> whether the parent corporation finances the subsidiary;
> (4) whether the parent corporation subscribed to all of
> the capital stock of the subsidiary or otherwise causes
> its incorporation; (5) whether the subsidiary has grossly
> inadequate capital; (6) whether the parent corporation
> pays the salaries or expenses or losses of the subsidiary;
> (7) whether the subsidiary has substantially no business
> except with the parent corporation, or no assets except

those conveyed to it by the parent corporation; (8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Id., 896 P.2d at 1017.

No single factor is conclusive in determining whether to apply the alter ego doctrine. Id. at 1018. In order to arrive at a determination that one corporation is the alter ego of another, it must be shown that allowing the legal fiction of separate corporate structures results in an injustice. Id.

In assessing this issue, the court is only concerned with whether BSC has provided adequate allegations for the application of the alter ego doctrine. In its counterclaim and third-party complaint, BSC alleges in pertinent part that: (1) BSC submitted a bid to W&W to erect all steel for the project; (2) BSC ultimately agreed with W&W to perform the work for a sum of $3,997,800 plus extra of $62,029; (3) BSC had no contact with MMI up to this point; (4) BSC then received a contract from W&W that provided that BSC would be contracting with MMI, rather than W&W; (5) after objection by BSC, W&W informed BSC that MMI would be the contractor in the BSC subcontract; (6) BSC was assured by W&W that it would be paid and its right to make a bond claim in the event of non-payment would not

be impaired or affected if W&W was allowed to issue joint checks to BSC and MMI; (7) upon information and belief, W&W knew MMI was undercapitalized; (8) the BSC subcontract was prepared by W&W; (9) BSC raised certain concerns about the subcontract and those concerns were addressed by W&W; (10) MMI holds itself out as a Hispanic minority-owned small business; (11) upon information and belief, MMI does not bid against W&W for jobs and has no assets to pay the subcontractors with which W&W instructs MMI to enter contracts with except for the funds made available by W&W; (12) MMI and W&W purportedly signed a subcontract agreement in the amount of $4,084,829, which is only $25,000 more than the BSC subcontract amount; (13) the MMI/W&W subcontract was a sham and had no legal purpose; (14) upon information and belief, the MMI/W&W subcontract was put in place for the purpose of (a) claiming minority status under the federal law, (b) using MMI as a facade for the operation of W&W, (c) positioning BSC so that it could not make a payment bond claim under the Miller Act, and (d) deceiving BSC into believing that W&W was entering into an arms-length transaction with MMI; (15) prior to and during the work on the project, BSC dealt with W&W in all aspects of the work while MMI was not involved in any of the matters; and (16) following its work on the project, BSC dealt with W&W about payment for its work and W&W responded to BSC's inquiries. Based upon these factual allegations, BSC contends that W&W and MMI acted as

one, single entity because (1) W&W controlled and directed all aspects of BSC's work on the project; (2) MMI exerted no control over BSC with respect to the work on the project; and (3) W&W dominated MMI to such an extent that W&W should be regarded as the contractor and BSC should be regarded as the subcontractor under the MMI/W&W subcontract.

The court believes that BSC has adequately stated a claim for application of the alter ego doctrine. The various allegations made by BSC are sufficient to suggest that MMI is the alter ego of W&W. The application of the various factors noted above do not all point in one direction. Nevertheless, the alleged facts show that the policy and practices of the two corporations were such that MMI had "no separate mind, will, or existence of its own and is but a business conduit for its principal." The court is aware that the use of the alter ego doctrine to pierce the corporate veil is to be exercised reluctantly and cautiously. Pemco, Inc. v. Kansas Dept. of Revenue, 258 Kan. 717, 907 P.2d 863, 867 (1995). Whether the doctrine should be applied here must be based upon a consideration of the facts. Commerce Bank, N.A. v. Liebau-Woodall & Assocs. L.P., 28 Kan.App.2d 674, 20 P.3d 88, 94 (2001). At this point, the court must deny this portion of the motions to dismiss filed by MMI and W&W.

B. Count II

In Count II, BSC alleges that, because W&W has third-party beneficiary status in relation to the MMI-BSC subcontract, W&W is also burdened with all of the duties and obligations of MMI to BSC under the MMI-BSC subcontract in the event of MMI's breach.

W&W contends that BSC's claim of breach of contract as a third-party beneficiary fails to state a claim upon which relief can be granted. W&W suggests that, although the Kansas courts have not addressed the legal issue framed by BSC in Count II, Kansas would follow the numerous other courts and jurisdictions that have addressed the issue and find that W&W's third-party beneficiary status under the MMI-BSC subcontract did not impose upon W&W the duties and obligations of MMI to BSC in the event of MMI's breach.

In Count II, BSC alleges the following concerning this claim:

86. W&W has claimed third-party beneficiary status under the BSC Subcontract.
87. Specifically, W&W alleges that BSC and MMI intended to benefit W&W by virtue of their having signed the BSC Subcontract. W&W alleges, therefore, that it is entitled to bring the present lawsuit against BSC to enforce the contractual provisions of the BSC Subcontract to W&W's benefit.
88. To the extent it is determined that W&W is a third-party beneficiary of the BSC Subcontract, then W&W is bound by all terms of the BSC Subcontract and assumes toward BSC all obligations and responsibilities that MMI assumed towards BSC, including the promises and obligation to pay BSC for the steel erection work that it performed at the Project for and on behalf of W&W and for the delays and other damages it suffered in working at the Project.

The law is well-settled that BSC cannot pursue the claim asserted in Count II. When a third-party beneficiary relationship is established, "the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either." Motorsport Eng'g, Inc. v. Maserati S.p.A., 316 F.3d 26, 29 (1st Cir. 2002) (internal citations omitted); see also Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103 (2nd Cir. 1985). "A third-party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to." Comer v. Micor, Inc., 436 F.3d 1098, 1102 (9th Cir. 2006)(emphasis in original). Accordingly, BSC has failed to state a claim against W&W upon which relief can be granted. This claim must be dismissed.

In reaching this conclusion, the court wants to comment on the argument raised by BSC. BSC relied heavily on a decision by Judge Van Bebber in Peter's Clothier, Inc. v. National Guardian Sec. Servs. Corp., 994 F.Supp. 1343 (D.Kan. 1998). BSC suggests that this opinion supports its claim in this case. We must disagree.

In Peter's Clothier, the plaintiff store owner brought suit against a security service for negligence and breach of implied warranty arising from actions taken under a contract entered into between the security service and the store's property manager for

installation of security upgrades in the plaintiff's store. Plaintiff denied that it was suing in the action as a third-party beneficiary of the contract in an effort to avoid a limitation of liability clause in the contract limiting the recovery of the property manager and, hence, the third-party beneficiary store owner. Judge Van Bebber found that the plaintiff store owner was a third-party beneficiary between the security service and the property manager. He further determined that the store owner could not

> accept the contract's benefits—the upgraded security system and the system's monitoring and repair—while refusing the contract's burdens—the provisions limiting National Guardian's liability. To hold otherwise would allow third-party beneficiaries to benefit from the agreed upon terms of a contract and then circumvent these very terms merely by sounding their claims in tort rather than contract.

Peter's Clothier, 994 F.Supp. at 1348.

Peter's Clothier does not stand for the proposition, as suggested by BSC, that not only are a third-party beneficiary's rights to recover under a contract subject to all of the defenses and limitations that the contract obligor could raise against the obligee, but that the beneficiary may also be affirmatively sued for damages by the obligor to make good on a contractual duty breached by the obligee. As suggested above, case law fails to support this position. The court is unable to find any support for BSC's contention.

14

C. Count IV

In Count IV, BSC alleges that W&W and MMI, during the course of its dealings with BSC on the Ft. Riley construction project, "supplied false information concerning the nature of the relationship between W&W and MMI, concerning the nature of the relationship between BSC and MMI." BSC has identified the following actionable misrepresentations by W&W: (1) W&W would enter into a contract with BSC to provide steel erection for the project; (2) MMI would act as a contractor to BSC; (3) BSC would be paid, and that MMI were good people and there won't be any issues with them or its payment; and (4) W&W and MMI were "old friends" and a company W&W had used in the past.

MMI contends that BSC has failed to allege facts under Missouri law that would support any claim of negligent misrepresentation against it. MMI asserts that BSC has failed to state any allegedly false statements made by MMI in the course of its dealings with BSC. MMI notes that BSC only general avers that W&W, together with MMI, "supplied false information concerning the nature of [their] relationship." MMI points out that the only negligent misrepresentations asserted by BSC concern statements made by W&W, not MMI. Moreover, MMI contends that BSC's complaint is deficient because BSC has not alleged that (1) MMI intentionally provided false information to BSC for the purpose of providing guidance on the

contract at issue; (2) BSC relied upon information provided by MMI; and (3) BSC suffered pecuniary loss as a result of the reliance on false statements made by MMI.

W&W contends that BSC's allegations of negligent misrepresentation must fail because they assert claims based upon W&W's intent to perform an agreement in the future. W&W argues that negligent misrepresentation claims cannot arise solely from evidence that a defendant did not perform according to a promise or statement of future intent. W&W next asserts that BSC's claims that it would be paid is not actionable negligent misrepresentation because it is an opinion. Finally, W&W suggests that BSC's allegation that W&W indicated that MMI was "good people" is immaterial to any issue in this case. W&W points out that BSC contends that W&W performed all of the MMI contract functions, not MMI. W&W also argues that BSC has failed to plead its negligent misrepresentations claim with the particularity required by Fed.R.Civ.P. 9(b).

BSC contends that the subcontract between MMI and BSC, which is attached to W&W's complaint, contains the following false statements: (1) MMI has, or is in the process of negotiating a contract with Balfour-Walton, a Joint Venture; and (2) MMI agreed to fabricate, supply and/or erect steel products for the project. BSC further suggests that it relied upon the terms and conditions set forth in the subcontract and, as a result of the aforementioned

statements, it sustained damages because it is required to litigate its right to make claim on the payment bond.

The parties agree that Missouri law should be applied to this claim. The elements of negligent misrepresentation in Missouri are: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss. Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 134 (Mo. 2010). "A claim for negligent misrepresentation, unlike one for fraud, does not involve a question of intent. Rather, such a claim is premised on the theory that the speaker believed the information supplied was correct but was negligent in so believing." Id.

A review of the third-party complaint reveals that BSC has alleged the required elements of negligent representation against W&W and MMI. The claim asserted by BSC contains the allegations required by Missouri law and contains a plausible claim for relief. Accordingly, the court shall not dismiss this claim.

D. Count V

In Count V, BSC asserts a claim of quantum meruit/unjust

enrichment against W&W. BSC alleges that it is entitled to payment from W&W for steel erection labor, equipment and services provided by it for the Fort Riley project that conferred a benefit upon W&W. BSC contends that it is entitled to these payments based upon an implied promise of W&W to pay BSC a "reasonable sum" for those items.

W&W argues that this claim fails to state a claim because BSC has failed to allege that (1) W&W failed to pay any person, i.e., MMI, BSC or any other person; and (2) BSC informed W&W that it expected to be paid by W&W. W&W suggests that BSC has made clear in its allegations that it expected to be paid by MMI, the entity with whom it had contracted to perform the steel erection work, not W&W.

BSC has responded that it has alleged that W&W was aware that BSC expected to be compensated by W&W. BSC has alleged that W&W solicited and negotiated a bid from BSC to perform steel erection work on the project, and then switched BSC's contract to a different, undercapitalized contractor--MMI. BSC asserts that W&W "tricked and deceived" BSC by inducing a change in BSC's position--from a contract with W&W, a known contractor, to a sub-contract with MMI, an unknown subcontractor--by repeatedly telling BSC that it would be paid and that BSC's changed position due to W&W's actions were detrimental because it caused BSC to be down line from an undercapitalized subcontractor which resulted in nonpayment and caused BSC to be too remote to make a Miller Act payment bond claim.

BSC also contends that W&W's argument that BSC has failed to allege that W&W failed to pay MMI or any other person for benefits BSC conferred on W&W misses the mark. BSC suggests that its quantum meruit/unjust enrichment claim is based on BSC's direct interactions with W&W. BSC points to the following facts as support for this contention: (1) W&W directed BSC's work on the project; (2) W&W received and reviewed BSC's daily logs and reports; (3) W&W received, reviewed and submitted BSC's pay applications; and (4) W&W paid BSC directly for its work on the project.

The Kansas Supreme Court has explained quantum meruit/unjust enrichment as follows:

> "'Quantum meruit is an equitable doctrine. "Restitution and unjust enrichment are modern designation for the older doctrine of quasi-contracts." <u>Peterson v. Midland Nat'l Bank</u>, 242 Kan. 266, 275, 747 P.2d 159 (1987). "The theory of quasi-contract is raised by the law on the basis of justice and equity regardless of the assent of the parties." <u>Holiday Development Co. v. Tobin Construction Co.</u>, 219 Kan. 701, 708, 549 P.2d 1376 (1976). "The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him [or her]." <u>Peterson</u>, 242 Kan. at 275 [747 P.2d 159].' <u>Pioneer Operations Co. v. Brandeberry</u>, 14 Kan.App.2d 289, 299, 789 P.2d 1182 (1990)."

<u>Haz-Mat Response, Inc. v. Certified Waste Services, Ltd.</u>, 259 Kan. 166, 910 P.2d 839, 846 (1996)(quoting <u>Haz-Mat Response, Inc., v. Certified Waste Services, Ltd.</u>, 21 Kan.App.2d 56, 896 P.2d 393, 399 (1995)).

The basic elements of a claim based upon the theory of unjust enrichment are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." J.W. Thompson Co. v. Welles Products Corp., 243 Kan. 503, 758 P.2d 738, 745 (1988).

The court is persuaded that BSC Steel has sufficiently alleged a claim of quantum/meruit/unjust enrichment against W&W based upon Kansas law. This is one of several claims that the court believes might be better evaluated on summary judgment.

E. Count VI

In Count VI, BSC seeks an equitable award of a reasonable sum for its labor, equipment and services that it allegedly provided to the Ft. Riley project, all based upon its alleged detrimental reliance upon certain promises made to it by W&W that BSC would be paid for such work.

W&W seeks dismissal of BSC's claim of promissory estoppel for failure to state a claim upon which relief can be granted. W&W argues that the oral promises stated in Count VI do not constitute a "valid and otherwise enforceable contract," a prerequisite for promissory estoppel. W&W contends that these promises are simply

too vague and indefinite to constitute a valid contract.

BSC has countered that the argument raised by W&W is immaterial. BSC indicates that it does not dispute that it cannot simultaneously recover under the theories of both breach of contract and promissory estoppel. BSC states that it is asserting the promissory estoppel claim as an alternative to its breach of contract claim because W&W actively disputes BSC's claim of a valid and enforceable contract. BSC contends that, under the doctrine of the election of remedies, it cannot be forced to choose between its alternate theories prior to trial.

Where a breach of contract theory does not permit recovery, Kansas has traditionally allowed a remedy under the theory of promissory estoppel. <u>Bittel v. Farm Credit Svcs. of Central Kansas, P.C.A.</u>, 265 Kan. 651, 962 P.2d 491, 498 (1998). To be successful on a promissory estoppel claim, a plaintiff must establish evidence showing (1) the promisor reasonably intended or expected the promisee to act in reliance on the promise; (2) the promisee acted reasonably in reliance on that promise; and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice. <u>See</u> <u>Ayalla v. Southridge Presbyterian Church</u>, 37 Kan.App.2d 312, 152 P.3d 670, 677 (2007).

The court believes that BSC has adequately stated a claim of promissory estoppel. BSC has alleged the necessary elements for a

21

promissory estoppel claim.  Accordingly, this portion of W&W's motion shall be denied.

F. Count VII

In Count VII, BSC seeks payment under the payment bond issued by Liberty Mutual for the Ft. Riley project.  BSC contends that it is an intended beneficiary of the W&W bond, and is therefore entitled to receive from W&W and Liberty Mutual all remaining contract balances owed to it.

Liberty Mutual asserts that BSC's claim on the payment bond must fail because it is wholly derivative of W&W's liability on the substantive claims and BSC has failed to state any claim upon which relief can be granted against W&W.  As noted previously in this order, the court finds that BSC has sufficiently alleged certain claims against W&W.  Therefore, the court shall not dismiss BSC's claim against Liberty Mutual based upon the payment bond.

G. Count VIII

In Count VIII, BSC asserts a claim against W&W, MMI and Liberty Mutual under the Kansas Fairness in Public Construction Contract Act (KFPCCA), K.S.A. 16-1901 et seq., for monies BSC contends it is owed on the Ft. Riley project and certain related costs, attorney's fees and interest.

MMI and W& W assert that BSC cannot make a claim under the KFPCCA because BSC was not performing work under a contract entered into

with a proper owner.  They suggest that the only contracts covered by the KFPCCA are contracts with the State of Kansas or one of its subdivisions.  Thus, they contend that Count VIII should be dismissed.  BSC counters that it did enter into a contract for public construction so the provisions of the KFPCCA should apply and MMI's motion on this claim should be denied.

The KFPCCA requires payments to subcontractors, including retainage, within seven business days of receipt of payment from the owner.  K.S.A. 16-1903(f); see also VHC Van Hoecke Contracting, Inc. v. Murray & Sons Const. Co., Inc., 278 P.3d 1001, 2012 WL 2326027 at * 2 (Kan.App. June 15, 2012).  Interest and attorney fees will accrue if the contractor fails to pay the undisputed amounts.  K.S.A. 16-1904 and 16-1906.

Under the KFPCCA, an "owner" is defined as "a public entity that holds an ownership interest in real property."  K.S.A. 16-1902(e). A "public entity" means "the state of Kansas, political subdivisions, cities, counties, state universities or colleges, school districts, all special districts, join agreement entities, public authorities, public trust, nonprofit corporations and other organizations which are operated with public money for the public good."  K.S.A. 16-1902(f).

Neither party has provided the court with any case authority interpreting the aforementioned provisions and the court has failed

to discover any relevant case law. Thus, the court writes on a clean slate.

MMI and W&W contend that the focus of the statute is upon public construction projects in Kansas involving property owned by the State of Kansas, one of its subdivisions, or any of the public entities defined in K.S.A. 16-1902. They argue that BSC's third-party complaint and counterclaim does not allege a "public entity" that maintains an ownership interest in the property at issue here. BSC responds that "[t]here is no requirement in the KFPCCA that a 'public entity' be a public entity affiliated with the state of Kansas." BSC points out that the definition of public entity under the KFPCCA includes "other organizations which are operated with public money for the public good." Thus, BSC suggests that a construction contract involving the steel fabrication and erection work at an army hospital at a military base is "clearly an organization operated with public money for the public good."

As correctly pointed out by W&W, the actual owner in this case is the United States. The prime contract in this case was issued by the United States Corps of Engineers as agent for the United States. Thus, the court must consider whether the "United States" constitutes a "public authority" or "organization operated with public money."

The court's review of the definition of "public entity" indicates that the KFPCCA applies only to entities that have a connection with the State of Kansas.  The definition starts with the State of Kansas and then enumerates smaller entities.  The court is not persuaded that the public entity definition would have been written in this fashion if the legislature had intended to include the United States as falling into the category of "other organizations which are operated with public money for the public good."

Even assuming that the definition of public entity was ambiguous, application of the ejusdem generis canon of statutory construction would lead to the same conclusion.  As explained in State v. Moler, 269 Kan. 362, 2 P.3d 773, 775 (2000):

> The rule of ejusdem generis (of the same kind) is a well-known maxim of construction to aid in ascertaining the meaning of a statute or other written instrument which is ambiguous. Under the maxim, where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms. State Bd. of Nursing v. Ruebke, 259 Kan. 599, 620, 913 P.2d 142 (1996).

The KFPCCA expressly states that the State of Kansas and subdivisions are public entities for the purposes of the Act.  The KFPCCA, however, does not contain a similar provision defining the federal government and its subdivisions in its definition of "public entity."  Thus, under the maxim "expressio unius est exclusio aterius (the express mention of one thing excludes all others)," it may be

presumed that the legislature expressly included specific terms concerning the State of Kansas and its subdivisions, but intended to exclude the Federal government, other State governments, and their subdivisions from the "public entity" category.  See In re Lietz Const. Co., 273 Kan. 890, 47 P.3d 1275, 1290 (2002).  Moreover, because the KFPCCA enumerates a list of governmental entities from the broadest and most expansive to the least expansive, the general terms "public authorities" or "organizations" coming at the end could not possibly include the United States, the broadest and most expansive public entity possible.  If the legislature had intended to include the United States in the definition of "public entity," it would have preceded the State of Kansas with the United States in the enumerated order of entities.  Thus, based upon this construction of the KFPCCA, the court finds that the prime contract and the subcontracts extending from it do not fall within the purview of the KFPCCA.  The court must dismiss Count VIII against W&W, MMI and Liberty Mutual for failure to state a claim upon which relief can be granted.

H. Count IX

    In Count IX, BSC asserts claims against W&W, MMI and Liberty Mutual under the Federal Prompt Payment Act (FPPA), 31 U.S.C. §3901 et seq., for monies BSC contends it is owed on the Ft. Riley project, and certain related costs, attorney's fees and interest.

26

W&W, MMI and Liberty Mutual contend that BSC has failed to state a claim under the FPPA because it does not provide a private cause of action to a contractor seeking payment from another contractor. Thus, they argue that this claim should be dismissed because the FPPA does not create a private right of action for subcontractors. These parties point to a number of federal courts that have reached this conclusion.

BSC has suggested a somewhat circuitous route in contending that the FPPA provides it with a cause of action here. BSC argues that the FPPA requires that the prime contractor on a federal construction project to ensure that every subcontract on the project contains certain terms regarding payment required by the Act. It further asserts that these provisions, by operation of law, must be read into every federal construction contract or subcontract falling under the FPPA. Thus, BSC contends that these provisions are read into the MMI-BSC contract and BSC can then sue W&W on them.

The court finds no merit to the argument raised by BSC. The FPPA mandates that government construction contracts must include a clause that requires the general contractor to pay subcontractors for satisfactory performance within seven days of receipt of payment from the federal agency. <u>See</u> 31 U.S.C. §3905(b)(1). Courts, however, have repeatedly rejected the argument that the FPPA contains either an explicit or implied private cause of action in favor of

27

unpaid subcontractors. See United States ex rel. IES Comm'l, Inc. v. Continental Ins. Co., Inc., 814 F.Supp.2d 1, 2-4 (D.D.C. 2011); United States ex rel. King Mountain Gravel, LLC v. RB Constructors, LLC, 556 F.Supp.2d 1250, 1252-53 (D.Colo. 2008); In re Thomas, 255 B.R. 648, 654 (Bkrtcy.D.N.J. 2000); U.S. ex rel. Virginia Beach Mechanical Services, Inc. v. SAMCO Construction Co., 39 F.Supp.2d 661, 677-78 (E.D.Va.1999); Transamerica Premier Ins. Co. v. Ober, 894 F.Supp. 471, 479-80 (D.Me.1995).

As stated in King Mountain Gravel, 556 F.Supp.2d at 1253: "Congress intended that a subcontractor must opt to bring its claims either under state law--as allowed by 31 U.S.C. §3905(j)--or under the Miller Act." Moreover, the law is also well-settled that a claim under the FPPA can only be asserted after it has been resolved that a contractor is entitled to payment. Thus, subcontractors on federal construction projects cannot bring a concurrent FPPA claim in conjunction with a Miller Act claim. Accordingly, for the foregoing reasons, BSC cannot bring a claim under the FPPA. The court shall dismiss BSC's claim against MMI, W&W and Liberty Mutual under the FPPA in Count IX for failure to state a claim upon which relief can be granted.

I. Count X

In Count X, BSC asserts a claim of fraudulent misrepresentation against W&W. BSC alleges that W&W committed fraud when it

deliberately failed to disclose to BSC that MMI, a minority-based subcontractor, would be involved in the Ft. Riley project. BSC further alleges that it relied upon the fact that it would be doing business with W&W when it submitted a bid for the project.

W&W contends that BSC's claim of fraudulent misrepresentation fails to state a claim upon which relief can be granted. W&W asserts that BSC (1) has failed to allege fraud with sufficient particularity under Fed.R.Civ.P. 9(b); (2) cannot assert a claim for fraudulent inducement to enter a contract based upon prior representations that are contrary to the terms of the contract that BSC saw before execution; and (3) has failed to allege that W&W intended to deceive BSC at the time the alleged misrepresentations were made.

The parties disagree on the law applicable to this claim. W&W contends that Kansas law applies while BSC suggests that Missouri law is applicable. W&W has suggested that it makes no difference which state law is applied because the law of both is similar on claims of fraudulent misrepresentation.

The choice of law rule in Kansas provides that the law of the state where the tort occurred applied. <u>First Magnus Fin. Corp. V. Star Equity Funding, LLC</u>, 2007 WL 635312 at * 4 n. 2 (D.Kan. Feb. 27, 2002). Since BSC's principal place of business is in Kansas City, Missouri, the court finds that Missouri law should be applied here.

Rule 9(b) requires parties asserting fraud to "state with

particularity the circumstances constituting fraud or mistake."
Fed.R.Civ.P. 9(b). The complaint must "set forth the time, place and
contents of the false representation, the identity of the party
making the false statements and the consequences thereof." Schwartz
v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir.
1997)(quoting Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th
Cir. 1991)).

To establish a claim of fraudulent misrepresentation under
Missouri law, a claimant must show (1) a representation, (2) its
falsity, (3) its materiality, (4) the speaker's knowledge of the
representation's falsity or ignorance of its truth, (5) the speaker's
intent that the representation be acted upon by the person and in
the manner reasonably contemplated, (6) the hearer's ignorance of the
falsity of the representation, (7) the hearer's reliance on the truth
of the representation, (8) the hearer's right to rely thereon and (9)
the hearer's consequent and proximate injury. Hess v. Chase
Manhattan Bank, USA, N.A., 220 S.W.3d 758, 765 (Mo. 2007).

In its counterclaim, BSC alleges that W&W engaged in a
fraudulent misrepresentation by representing that it would contract
with BSC if W&W was the successful bidder on the project, and did
not disclose that the final contract would be with MMI.  Thus, BSC
contends that W&W's failure to disclose that it was negotiating a
contract for MMI and not for itself constitutes actionable fraudulent

misrepresentation under Missouri law.  W&W counters that there is
no actionable fraud or intent to deceive by W&W because W&W informed
BSC that MMI would be the contracting party before BSC bound itself
to its bid on the project.

The court has reviewed the allegations contained in the
third-party complaint on this claim.  The court believes that BSC
has adequately alleged a plausible claim for fraudulent
misrepresentation under Missouri law and Fed.R.Civ.P. 9(b).  The
court recognizes that W&W has raised some arguments that may
ultimately demonstrate that BSC is not entitled to relief.  However,
the court believes that those arguments must be considered on a motion
for summary judgment when the facts related to this claim are set
forth.  At this time, the court finds only that BSC has properly
stated a claim and is entitled to proceed to discovery.

J. Count XI

In Count XI, BSC asserts claims against W&W, MMI and Liberty
Mutual under the Kansas Fairness in Private Construction Act (KFPCA),
K.S.A. 16-1801 et seq., for monies BSC contends it is owed on the
Ft. Riley project and certain related costs, attorney's fees and
interest.

MMI and W&W contend that BSC's claim under the KFPCA should be
dismissed because the construction project at issue in this action
is not subject to the terms of KFPCA.  They note that the KFPCA

applies only to contracts involving property owned by "an individual, corporation, estate, trust, partnership, limited liability company, association, joint venture or any other legal entity." K.S.A. 16-1802(d) & (e). Thus, they argue that a federal project on federal land would not fall within the purview of the KFPCA.

The parties have failed to provide the court with any case authority for their positions on the KFPCA. The court fails to find any Kansas cases that have construed the KFPCA.

As noted previously, the KFPCA applies to contracts involving property owned by "an individual, corporation, estate, trust, partnership, limited liability company, association, joint venture or any other legal entity." K.S.A. 16-1802(d) and (e). The term "any other legal entity" is not defined by the KFPCA. The court believes that the application of the rule of ejusdem generis which dictates that "where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms," see State v. Vogt, 30 Kan.App.2d 1138, 55 P.3d 365, 368 (2002), indicates that the KFPCA covers property owned by private, non-governmental entities. Because the KFPCA enumerates a list of private, non-governmental entities that may be "owners" for purposes of the Act, the term "other legal entity" should be construed to encompass only similar private

actors, and should not be read to encompass governmental units such as the United States or branches of its military.  This construction is also consistent with the title of the act, the Kansas Fairness in Private Construction Act.  See Kern v. Miller, 216 Kan. 724, 533 P.2d 1244 (1975)(statute providing immunity to various governmental bodies does not apply to individuals and this construction is consistent with title of the act, "Claims Against the State").  BSC has failed to allege facts that show that the project at issue involved real property owned by a statutorily-defined private entity.  Accordingly, BSC's claim under the KFPCA must be dismissed.

V.

In sum, the court shall grant in part and deny in part the motions to dismiss filed by MMI and W&W.  The court shall dismiss the following claims contained in BSC's third-party complaint: Count II against W&W (breach of contract), Count VIII against W&W, MMI and Liberty Mutual (KFPCCA), Count IX against W&W, MMI and Liberty Mutual (FPPA) and Count XI against W&W, MMI and Liberty Mutual (KFPCA).  The court shall deny the motions as they address the remaining claims.

**IT IS THEREFORE ORDERED** that the motion to dismiss of counterclaim defendant W&W Steel, LLC and third-party defendant Liberty Mutual Insurance Company (Doc. # 69) be hereby granted in part and denied in part.  The following counts of BSC Steel, LLC's second amended counterclaim and third-party complaint are hereby

33

dismissed for failure to state a claim upon which relief can be granted: Count II, Count VIII, Count IX and Count XI.

**IT IS FURTHER ORDERED** that the motion to dismiss of third-party defendant Material Management, Inc. (Doc. # 66) be hereby granted in part and denied in part. The following count of BSC Steel, LLC's third-party complaint is hereby dismissed for failure to state a claim upon which relief can be granted: Count VIII, Count IX and Count XI.

**IT IS SO ORDERED.**

Dated: **May 9, 2013**          **s/  Julie A. Robinson**

                                **United States District Judge**