IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

APAC-KANSAS, INC.,

   Intervenor Plaintiff,

v.

BSC STEEL INC.; W & W STEEL,
LLC; and LIBERTY MUTUAL
INSURANCE CO.;

   Intervenor Defendants.

_____  Case No. 11-2613-RDR

AMERICAN RIGGERS SUPPLY, INC.,

   Intervenor Plaintiff,

v.

BSC STEEL INC.; W & W STEEL,
LLC; and LIBERTY MUTUAL
INSURANCE CO.;

   Intervenor Defendants.

**MEMORANDUM AND ORDER**

  This matter is presently before the court upon the
following motions for partial summary judgment: (1) APAC-Kansas,
Inc. (APAC) against W & W Steel, LLC (W&W) and Liberty Mutual
Insurance Company (Liberty Mutual) (Doc. # 135); (2) W&W and
Liberty Mutual against APAC (Doc. # 142); (3) W&W and Liberty
Mutual against American Riggers Supply, Inc. (American Riggers)

1

(Doc. # 159); (4) APAC against BSC Steel, Inc. (BSC) (Doc. # 161); and (5) American Riggers against BSC, W&W and Liberty Mutual (Doc. # 163). APAC has also filed a motion for oral argument on the motion for partial judgment filed against W&W and Liberty Mutual and the cross-motion for partial summary judgment filed by W&W and Liberty Mutual against it.[1]  Having carefully reviewed the pending motions, the court is now prepared to rule.

I.  Factual Background

This case arises out of the construction of the Irwin Army Community Hospital located on Fort Riley, Kansas.  Balfour-Walton Joint Venture (BWJV) served as the general contractor on the project (Project). BWJV contracted a portion of the work to W&W.  W&W agreed to perform the steel erection of the general contract work on the project.  W&W then subcontracted some of its work to Materials Management, Inc. (MMI).  MMI then entered into a contract with BSC for the steel erection.  Liberty Mutual, as surety, issued a payment bond (Payment Bond) in connection with the subcontract between BWJV and W&W for sums

---

[1] APAC-Kansas, Inc. seeks oral argument on these motions pursuant to D.Kan. Rule 7.2.  Rule 7.2 states that "[t]he court may set any motion for oral argument ... at the request of a party ..."  The discretion to schedule oral argument lies with the court. The court does not find oral argument necessary here. The court shall deny APAC-Kansas, Inc.'s request for oral argument.

due on the project in the amount of $12,640,000.

APAC entered into a series of lease agreements with BSC in which APAC agreed to furnish BSC with certain equipment and associated labor. APAC furnished and supplied all of the equipment, services and associated labor as required under the lease agreements. APAC provided BSC with several invoices seeking payment for the equipment, services and labor. The invoice terms provided in part that finance charges of 1.5% per month would accrue on all unpaid invoices. BSC admits that it has not made full payment. APAC sought payment from W&W for the amounts owed by BSC, but W&W has made no payment to APAC. In this case, APAC seeks the value of the equipment and services provided to BSC which amounts to $275,756.35 plus prejudgment interest of $155,292.61 plus additional continuing interest, attorney's fees and costs. APAC seeks to recover these amounts from the Payment Bond issued by Liberty Mutual.

American Riggers provided material and services to BSC for use by BSC in performance of BSC's subcontract with MMI. BSC owes American Riggers the principal amount of $170,572.00 for the material and services. American Riggers sought payment from W&W and Liberty Mutual for this amount, but they have made no payments to American Riggers. American Riggers now seeks judgment in the amount of $170,572.00, as well as interest at 10

percent under K.S.A. 16-201.

II. Procedural Background

APAC filed a motion for summary judgment on Count VI of its complaint in intervention. APAC sought payment from W&W and Liberty Mutual under the Payment Bond for equipment and services it provided to BSC. APAC asserts that payment has not been made by W&W or Liberty Mutual after they received notice of APAC's bond claim. In response, W&W and Liberty Mutual argued (1) APAC has no standing to bring claim under the Payment Bond because APAC is not a proper claimant; (2) APAC is not entitled to payment under the Payment Bond because it has not shown, as required by the subcontract between BWJV and W&W, that W&W has been paid by BWJV for the work of APAC; (3) W&W has been discharged from any liability to APAC because W&W has satisfied its responsibilities under the "pay-when-paid" obligations of its subcontract with BWJV by paying $163,500.00 to BSC for work performed by APAC; (4) APAC failed to provide W&W with timely notice of its claim and W&W has been prejudiced by that failure; and (5) APAC has failed to show its charges are correct and that its charges were actually forwarded to W&W.

W&W and Liberty Mutual filed a cross-motion for partial summary judgment on Count VI of APAC's complaint in intervention after it filed a response to APAC's motion for summary judgment

4

on that claim.   In this motion, W&W and Liberty Mutual raised one of the arguments raised in their earlier response.   They contended that APAC is not a proper claimant under the Payment Bond and, therefore, lacks standing to bring a claim under it.

APAC has also filed a motion for summary judgment against BSC.   In this motion, APAC seeks summary judgment on the breach of contract claims asserted in Counts II, III and IV of its complaint for intervention against BSC.   BSC has indicated to the court that it does not intend to file a response to APAC's motion.

W&W and Liberty Mutual have also filed a motion for partial summary judgment on American Riggers' claim against them under the Payment Bond.   They raise the same argument that they raised concerning the claim made by APAC under the Payment Bond.   They contend that American Riggers is not a proper claimant under the Payment Bond and, therefore, lacks standing to bring a claim under it.

American Riggers has filed a motion for summary judgment against BSC, W&W Steel and Liberty Mutual.   American Riggers seeks summary judgment against BSC for payment for the materials and services that it provided to BSC for the Project.   BSC has indicated to the court that it does not intend to file a response to American Riggers' motion.   American Riggers also

5

seeks summary judgment against W&W and Liberty Mutual under the Payment Bond for materials and services provided on the Project. In response, W&W and Liberty Mutual contend (1) American Riggers is not a proper claimant under the Payment Bond and, thus, lacks standing to recover under the Bond; (2) American Riggers is not entitled to payment under the Payment Bond because it has not shown, as required by the subcontract between BWJV and W&W, that W&W has been paid by BWJV for the work of American Riggers; (3) American Riggers failed to provide W&W with timely notice of its claim and W&W has been prejudiced by that failure; (4) American Riggers has failed to show its charges are correct and that its charges were actually forwarded to W&W; and (5) the amount of damages owed to American Riggers remains in dispute.

III.  Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  <u>City of Herriman v. Bell</u>, 590 F.3d 1176, 1181 (10th Cir. 2010).  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a

reasonable jury could return a verdict for the non-moving party." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001)(citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248).

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002), cert. denied, 537 U.S. 816 (2002)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the non-movant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.  Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(citing Adler, 144

F.3d at 671); see also Kannady v. City of Kiowa, 590 F.3d 1161, 1169 (10th Cir. 2010).

Once the movant has met the initial burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256; Celotex, 477 U.S. at 324; Spaulding, 279 F.3d at 904 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. Anderson, 477 U.S. at 256; accord Eck v. Parke, Davis & Co., 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1197-98 (10th Cir. 2000)(quoting Adler, 144 F.3d at 670-71); see Kannady, 590 F.3d at 1169.

The defendant has the burden of proof on an affirmative defense, and thus in moving for summary judgment on the affirmative defense, "[t]he defendant. . .must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). Once the defendant makes this initial showing, "the

8

plaintiff must then demonstrate with specificity the existence of a disputed material fact." <u>Id</u>.   If after the evidence is viewed in the light most favorable to the plaintiff, the plaintiff cannot meet this burden, "the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." <u>Id</u>.

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." <u>Celotex</u>, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988). When examining the underlying facts of the case, the court is cognizant that it may not make credibility determinations or weigh the evidence.  <u>Matsushita</u>, 475 U.S. at 587.

IV.  Applicable Law/Analysis

This case is based on diversity jurisdiction.  Thus, the court applies the substantive law of the forum state, including its choice-of-law rules.  Here, the court must look to the forum state's choice-of-law rules to determine the effect of a

contractual choice-of-law clause. The BWJV/W&W Subcontract, which is specifically incorporated by reference into the Payment Bond, states that the "laws of the State in which the project is located will be applied in resolving the dispute." The project was located in Kansas and, therefore, Kansas law applies.

With the exception of the claims of APAC and American Riggers against BSC, the remaining motions involve the claims of APAC and American Riggers based upon the Payment Bond. As correctly pointed out by APAC and American Riggers, the court is not considering any claims under the Miller Act, 40 U.S.C. § 3131 et seq., which mandates that, when awarding a federal contract for construction of public building or public work of the federal government, a contractor must furnish a bond to the federal government in order to ensure that payment of all persons supplying labor and material in carrying out the work provided for in the contract. 40 U.S.C. § 3131(b)(2). Here, BWJV required that W&W execute a Payment Bond for the Project. It is that common law bond that the court considers here.

"A surety bond is to be construed in the light of the circumstances in which it is given, so as to effectuate its purpose." Local No. 1179 v. Merchants Mut. Bonding Co., 228 Kan. 226, 613 P.2d 944, 946 (1980). But it is also well established in Kansas law that "the obligation of a bond is to be measured by

10

the bond itself and may not be extended by implication or enlarged by construction beyond the terms of the executed contract." <u>In re Smith's Estate</u>, 211 Kan. 397, 507 P.2d 189, 192 (1973). Moreover, "[t]he primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." <u>Osterhaus v. Toth</u>, 291 Kan. 759, 249 P.3d 888, 896 (2011). But, a bond will be construed favorably to the bonded, if such construction is consistent with the object for which the bond was made. <u>Farmer v. Rutherford</u>, 136 Kan. 298, 15 P.2d 474, 477-78 (1932); <u>State v. Mass. Bonding & Ins. Co.</u>, 91 Kan. 74, 136 P. 905, 908 (1913)

A.  Proper Claimants under the Payment Bond

W&W and Liberty Mutual contend in their motions for summary judgment that American Riggers and APAC are not proper claimants under the Payment Bond. Thus, they contend that APAC and American Riggers lack standing to make a claim based upon the Payment Bond.

The relevant portion of the Payment bond provides as follows:

> **NOW THEREFORE**, the condition of this obligation is such that if the Contractor shall make payment to all claimants for all costs and expenses resulting

11

from the performance of this Subcontract and for all labor, materials, equipment, supplies, services, and the like, used or reasonably required for use in the performance of this Subcontract, for all or any part of which the Contractor and Owner is liable, failing which such claimants shall have a direct right of action against the Subcontractor and Surety under this obligation, subject to the Contractor's priority, shall have the right to bring an action against the Subcontractor and Surety on behalf of unpaid claimants, then this obligation shall be null and void, otherwise, it shall remain in full force.

The arguments of W&W and Liberty Mutual have changed during the course of the debate on the instant motions for summary judgment. Initially they contended, relying upon the language in the aforementioned clause "to whom the Contractor and Owner is liable," that American Riggers and APAC were not proper claimants under the Payment Bond because they could not establish that the Contractor (BWJV) and the Owner (the United States) were directly liable to them for their claims.

After APAC and American Riggers pointed out that based upon that interpretation of the clause no one would qualify as a claimant because there is no one to whom both BWJV and the United States could directly be liable, W&W and Liberty Mutual changed their argument to rewrite the Payment Bond to change "Contractor and Owner" to "Contractor or Owner."  In support of this argument, they pointed to a variety of cases where courts have interpreted "and" to mean "and/or."

12

The court finds no merit to the arguments offered by W&W and Liberty Mutual. The court believes that the appropriate construction of the phrase "for all or any part of which the Contractor and Owner is liable" is a general reference to the costs of constructing the project. Claimants can seek recovery under the Payment Bond only if they are seeking costs and expenses for labor and materials used in the performance of a subcontract for which BWJV and the United States would be liable. See United States ex rel. Wheeling-Pittsburgh Steel Corp. v. Algernon Blair Inc., 329 F.Supp. 1360, 1364 (D.S.C. 1971)(court construed same clause in a payment bond and found that materialman who provided material to subcontractor is entitled to benefit of the payment bond due to the language providing for direct action by all claimants). This reading is in harmony with the purpose of the Payment Bond. Moreover, such an interpretation does not require rewriting the bond language as suggested by W&W and Liberty Mutual. Finally, this reading is consistent with the rule that a bond must be construed in favor of the claimant and against the surety.

B. Pay-When-Paid

W&W and Liberty Mutual next contend that even if APAC and American Riggers are proper claimants, they are not entitled to summary judgment on their claims because they have not shown

13

that either BWJV or W&W has been paid for their work. Thus, they argue that subcontractors APAC and American Riggers can only recover after they show that an upper-tier contractor has been paid for the work or supplies sought by them.

The pay-when-paid argument articulated by W&W and Liberty Mutual is more complicated than either party has acknowledged. In <u>MidAmerica Construction Management, Inc. v. MasTec North America, Inc.</u>, 436 F.3d 1257, 1261-62 (10th Cir. 2006), the Tenth Circuit explained such provisions in construction contracts as follows:

> Construction contracts often contain provisions referred to as "pay-when-paid" and "pay-if-paid" clauses. See Robert F. Carney & Adam Cizek, Payment Provisions in Construction Contracts and Construction Trust Fund Statutes: A Fifty-State Survey, 24 Construction Law. 5 (2004). Courts have not uniformly applied these terms. See id. ("Some courts refer to both provisions as 'pay-when-paid' clauses...."). Still, the terms "pay-when-paid" and "pay-if-paid" refer to distinct types of contractual clauses:
> A typical "pay-when-paid" clause might read: "Contractor shall pay subcontractor within seven days of contractor's receipt of payment from the owner." Under such a provision in a construction subcontract, a contractor's obligation to pay the subcontractor is triggered upon receipt of payment from the owner. Most courts hold that this type of clause at least means that the contractor's obligation to make payment is suspended for a reasonable amount of time for the contractor to receive payment from the owner. The theory is that a "pay-when-paid" clause creates a timing mechanism only. Such a clause does not

14

create a condition precedent to the
obligation to ever make payment, and it does
not expressly shift the risk of the owner's
nonpayment to the subcontractor....

     A typical "pay-if-paid" clause might
read: "Contractor's receipt of payment from
the owner is a condition precedent to
contractor's obligation to make payment to
the subcontractor; the subcontractor
expressly assumes the risk of the *1262
owner's nonpayment and the subcontract price
includes this risk." Under a "pay-if-paid"
provision in a construction contract,
receipt of payment by the contractor from
the owner is an express condition precedent
to the contractor's obligation to pay the
subcontractor. A "pay-if-paid" provision in a
construction subcontract is meant to shift
the risk of the owner's nonpayment under the
subcontract from the contractor to the
subcontractor. In many jurisdictions, courts
will enforce a "pay-if-paid" provision only
if that language is clear and unequivocal.
Judges generally will find that a
"pay-if-paid" provision does not create a
condition precedent, but rather a reasonable
timing provision, where the "pay-if-paid"
provision is ambiguous.

Id. at 5-6 (footnotes omitted).

     Two Kansas cases, both from the federal court, have

considered this issue.   In Shelley Electric, Inc. v. U.S.

Fidelity & Guaranty Co., 1992 WL 319654 (D.Kan. Oct. 16, 1992),

Judge Kelly noted that at that time no Kansas case had ever

considered the question of the proper interpretation of "paid-

when-paid" contract provisions.   1992 WL 319654 at * 2.   He

examined the construction contract and found it involved a "pay-

when-paid" clause rather than a "paid-if-paid" clause.   Id. at *3.

15

He noted that there was no language indicating the existence of a condition precedent and no express condition.  Id.

Subsequently, in Faith Technologies, Inc. v. Fidelity & Deposit Co. of Md., 2011 WL 251451 (D.Kan. Jan. 26, 2011), Judge Belot found that the subcontract there contained a "pay-if-paid" clause.  2011 WL 252451 at *3.  He relied upon language contained in the subcontract that provided payment by the owner to the subcontractor was a condition precedent for the subcontractor's liability for payment to others.  Id.

In this case, the subcontracts (the contract between W&W and MMI and the contract between MMI and BSC) provide in pertinent part:

> (a)  .  .  .  .Contractor shall be obligated to pay Subcontractor only when Contractor receives payment from the Owner or General Contractor, as the case may be, with such payments to be made within ten (10) days after receipt thereof by Contractor. Contractor shall not be obligated to make any payments (progress, final or otherwise) to Subcontractor until the Owner or General Contractor pays Contractor for the work performed by the Subcontractor.
>
> (b)  Upon receipt of payment from Contractor, Subcontractor shall promptly pay each of its subcontractors, materialmen, suppliers and any other party the amount to which said person is entitled. Subcontractor shall receive each payment in trust, and as bailee, for the express use and purpose of paying for all labor, materials, equipment and services (including all taxes, fees and assessments thereon) and other items and things used by subcontractor in the performance of its work; and title to such payments or any part thereof shall not vest in

16

Subcontractor until all obligations incurred by Subcontractor have been first paid in full and the work to be done under this Subcontract is satisfactorily completed. Contractor shall have the right, but not the obligation, at all times to contact Subcontractor's subcontractors, materialmen and suppliers to ensure that the same are being promptly paid by Subcontractor for labor, materials, equipment and services furnished for use in performing Subcontractor's work.

(c) As an express condition precedent to payment by Contractor to Subcontractor of any sums due and owing under this Subcontract, Subcontractor shall provide or have provided Contractor: (i) A description of work performed during such preceding payment period, (ii) A list of all bills for supplies, materials, equipment, and fixtures incorporated in the work (in detail reasonably sufficient to allow Contractor to determine where each item is incorporated) and labor performed (in detail reasonably sufficient to allow Contractor to determine where and on what portion of the work the labor was performed, including, but not limited to, certified weekly labor payrolls with names, dates, hours and rates) in connection with the work, together with copies of the actual bills to be paid; (iii) such certificates of insurance as required herein; (iv) lien releases, in forms satisfactory to Contractor, for Subcontractor and any of its sub-subcontractors, suppliers, or vendors related to the work for which payment is requested; and (v) any other information or documentation as Contractor may reasonably require to substantiate Subcontractor's request for payment. Subcontractor understands and agrees that Subcontractor's billing must be received by Contractor no later than the 15th of each month. Failure to timely submit billing may result in Subcontractor's payment being delayed until the following month.

As noted in <u>MidAmerica</u>, many jurisdictions enforce "pay-if-paid" provisions only if the language is clear and unequivocal. These courts refuse to shift the risk of the owner's

nonperformance from the general contractor to the subcontractor unless the language clearly indicates that the parties intended to do so.

A review of the language here does not evidence that the parties intended to shift the risk of the owner's nonperformance from the general contractor to the subcontractor with sufficient clarity to qualify as a condition precedent. The language of the subcontracts suggests that the parties agreed to a "pay-when-paid" arrangement, not a "pay-if-paid" arrangement. The language contained in paragraphs (a) and (b) could be interpreted only as timing provisions. It is not necessarily indicative of the parties' intent to make the subcontractor's obligation to pay its subcontractors dependent upon the subcontractor first being paid by the contractor or owner. This is particularly so when considered in light of the provisions of paragraph (c). There the parties created a condition precedent for the timely payment of payments by the contractor to the subcontractor. The first sentence illustrates that the parties knew how to create a condition precedent if they so desired. That they did not use such unambiguous language in paragraphs (a) and (b) prevents this court from construing that language as a condition precedent to the right to payment by APAC and American Riggers. The language contained here is closer to the language used in

18

the contract in <u>Shelley</u> than that used in the contract in <u>Faith Technologies</u>.    Therefore,    there    are    no    requirements,    as suggested   by   W&W,   that   APAC   and   American   Riggers   had   to establish that (1) W&W had been billed by BSC, through MMI, for the  labor,  services  and  equipment  APAC  and  American  Riggers;  or (2) W&W had been paid by BWJV for the work of APAC and American Riggers  for  which  they  make  claims.    Accordingly,  the  court  does not  find  that  the  argument  of  W&W  concerning  the  "pay-when-paid" provisions  of  the  subcontracts  precludes  summary  judgment  for APAC  and  American  Riggers  on  Count  VI  of  their  complaints  in intervention.

C.  Discharged from Liability Due to Payment

    W&W   also   contends   that   it   has   been   discharged   for   any liability  under  the  Payment  Bond  for  the  claims  asserted  by  APAC because  it  paid  BSC  and  MMI  certain  monies  that  represented  work performed  by  APAC.    In  support  of  this  argument,  W&W  notes  that in  April  2011,  BSC,  through  MMI,  submitted  certain  invoices  to it   for   work   BSC   and   MMI   performed   and   this   included   work performed  by  APAC.    W&W  paid  these  amounts  to  BSC  and  MMI  in June  2011.    This  amount  included  $163,500.00  for  work  performed by  APAC.    Accordingly,  W&W  contends  that  (1)  it  discharged  its obligations  under  the  subcontract  when  it  made  this  payment;  and (2)  it  had  no  further  liability  to  APAC  for  any  other  monies

19

because it never received any other payments from BWJV that were withheld from BSC and APAC.   Thus, W&W argues that APAC has no claim against it under the Payment Bond.

The arguments of W&W are based upon language contained in the subcontracts.   W&W attempts to piece together various parts of the subcontracts to support its contentions.   In a nutshell, W&W contends that it has satisfied its obligations under the subcontracts because it paid BSC/MMI when it received payment for the charges that contained the APAC claims.   And, it has no further obligations to APAC because it has never received any additional payments from BWJV that involved charges for BSC or APAC.

In making this argument, W&W has failed to properly consider the language of the Payment Bond.   The obligations of the Payment Bond are not conditioned upon the payment obligations of the incorporated subcontracts.   Rather, the Payment Bond provides that claimants are entitled to sue directly on the Payment Bond when they have not been paid for "all costs and expenses resulting from the performance of this Subcontract and for all labor, materials, equipment, supplies, services, and the like, used or reasonably required for use in the performance of this Subcontract." Because APAC was not paid for the equipment and services it provided to the Project, APAC

20

is covered under the Bond.   Accordingly, the court finds no merit to the contention raised by W&W.

D.  Notice Requirement

W&W and Liberty Mutual next argue that American Riggers and APAC did not give timely notice of their claims to W&W.   W&W indicates that APAC waited almost four months to provide notice that BSC had not paid for services APAC provided to the Project. W&W notes that American Riggers did not provide formal notice to it of BSC's alleged nonpayment until eight months after American Riggers first sold BSC material for use in the performance of the subcontract.

Requirements as to notice of loss are essentially contractual, unless the legislature has enacted statutes on the issue.   Thus, when a policy makes no reference to notice of loss, either expressly or by incorporation of a statutory provision, there is no specific requirement that such notice be given, even in the case of the principal's default on a bond guaranteeing payment for labor and material.   See Board of Public Instruction of Sarasota County v. Fidelity & Cas. Co. Of N.Y., 184 So.2d 491, 494 (Fla.Dist.Ct.App. 1966); Phoenix Ins. Co. v. Lester Bros., Inc., 203 Va. 802 127 S.E.2d 432, 436 (1962).   Here, W&W and Liberty Mutual have failed to point to any requirement of notice in the Payment Bond.   They have

21

further failed to show that Kansas or federal law requires notice under the circumstances here.  As a result, the court finds no merit to the argument raised by W&W and Liberty Mutual that either APAC or American Riggers failed to provide to notice here.

E.  Amount of Damages

In their motions for summary judgment, APAC and American Riggers indicated that it provided BSC certain materials, services and repairs for the Project.  APAC asserts that it is owed the principal amount of $275,756.35 plus interest of $155,292.61.  American Riggers states that BSC owes American Riggers the principal amount of $170,572 for these materials and services.  In support of these statements, APAC and American Riggers rely upon the affidavit of Robert Bartley.

W&W and Liberty Mutual contend that Bartley's affidavit cannot be used to support the statements that BSC has agreed to the charges asserted by APAC and American Riggers because Bartley last worked for BSC in October 1981 and he is not a current employee or agent of BSC.  The court finds no merit to this contention for a number of reasons.

The uncontroverted evidence before the court shows that Bartley is an authorized agent of BSC.  Jay D. Patel, an officer of BSC, has stated in an affidavit that Bartley was authorized

22

to speak on BSC's behalf.  In addition, APAC has pointed out that Bartley is currently an officer of BSC, the Secretary, and has been since at least 2011.  Accordingly, the challenges made by W&W and Liberty Mutual to Bartley's declarations are without merit.

Finally, W&W contends that the amount of American Riggers' damages remains in dispute and must be decided by a finder of fact.  W&W contends that the amount of damages claimed by American Riggers (1) does not account for the offset of certain returned items; and (2) fails to consider that it has already paid BSC for the amount requested by BSC.

The court finds no merit to the arguments raised by W&W concerning the amount sought by American Riggers.  In fact, the court is perplexed by the contentions made by W&W.  W&W and Liberty Mutual have stipulated in the Pretrial Order that BSC owes American Riggers $170,572.00.  Thus, the argument by W&W that the amounts owed to American Riggers are in dispute are contradicted by the stipulation and admission it made in the Pretrial Order.

Moreover, W&W has failed to raise a genuine issue of material fact concerning any contention that it is entitled to a setoff for the return of certain items.  For support of its contention concerning a possible setoff, W&W points to an

23

affidavit of Glenn A. VanEnk, who served as W&W's Project Manager for the Project.   He has stated in his affidavit that the invoices provided by American Riggers fail to provide a setoff for equipment returned to American Riggers after BSC stopped work on the project.   However, as correctly pointed out by American Riggers, there is no evidence in the record that any items were returned to it.   American Riggers has provided an affidavit of Jennifer Hughes, its Office Manager, in which she states that no items for which American Riggers seeks payment were returned to it.

W&W has also argued that it may have already paid MMI and BSC for some material or services provided by American Riggers. Thus, W&W contends that it would be not liable to American Riggers under the Payment Bond for any amount that it has paid to MMI and BSC for materials or services provided by American Riggers.   The court has already considered and rejected this argument when it was directed at the claim asserted by APAC.   We must do so again.

In U.S. ex rel. Quality Trust, Inc. v. Cajun Contractors, Inc., 486 F.Supp.2d 1255, 1267 (D.Kan. 2007), Judge Crow explained that in order to be successful on a claim under a Miller Act payment bond, a party must prove that it was not paid for the equipment it provided, the work it performed or the

24

supplies it furnished to the project.   Although Quality Trust

dealt with a payment bond under the Miller Act, this court is

confident that the elements necessary for success on a common

law payment bond are the same as those for a claim under the

Miller Act, especially when neither party has cited a Kansas

case on the issue.   See Lexicon, Inc. v. Safeco Ins. Co. Of

America, Inc., 436 F.3d 662, 668 n. 3 (6th Cir. 2006).   As

noted above, APAC and American Riggers have shown by the

undisputed facts that each provided equipment, labor or services

to the Project, and each was not paid.   Accordingly, since the

court has rejected all of the defenses asserted by W&W and

Liberty Mutual, APAC and American Riggers are entitled to

summary judgment against W&W and Liberty Mutual on their claims

based upon the Payment Bond.

F.  Claims Against BSC

      APAC seeks summary judgment on all its claims against BSC.

APAC asserts causes of action on account and breach of contract

against BSC.   APAC argues that the undisputed facts show that

BSC rented equipment for the Project and that BSC has failed to

pay for that equipment, even though BSC approved APAC's invoices.

APAC notes that BSC has not asserted any defenses.

      As previously noted, BSC has indicated that it does not

intend to respond to APAC's motion for summary judgment against

it.   In the pretrial order, BSC has acknowledged that APAC provided the equipment as set forth in their invoices.   BSC does not dispute the invoices or the amounts in those invoices.   BSC asserts no defenses to the claims made by APAC.

Given the admissions of BSC, the court finds that APAC's motion for summary judgment must be granted.   Accordingly, the court shall grant judgment to APAC and against BSC in the amount of $275,756.35 in principal, plus prejudgment interest of $155,292.61 which continues to accumulate daily plus its costs and attorney''s fees.

IT IS THEREFORE ORDERED that the motion for partial summary judgment of W & W Steel, LLC and Liberty Mutual Insurance Company (Doc. # 142) be hereby denied.

IT IS FURTHER ORDERED that the motion for partial summary judgment of W & W Steel, LLC and Liberty Mutual Insurance Company (Doc. # 159) be hereby denied.

IT IS FURTHER ORDERED that APAC-Kansas, Inc.'s motion for oral argument (Doc. # 152) be hereby denied.

IT IS FURTHER ORDERED that the motion for partial summary judgment of APAC-Kansas, Inc. (Doc. # 135) be hereby granted. Judgment shall be entered for APAC-Kansas, Inc. and against W & W Steel, LLC and Liberty Mutual Insurance Company on Count VI of APAC-Kansas, Inc.'s complaint in intervention in the amount of

25

$275,756.35 plus prejudgment interest of $155,292.61 along with continuing interest and attorney's fees.

IT IS FURTHER ORDERED that the motion for summary judgment of APAC-Kansas, Inc. (Doc. # 161) be hereby granted.  Judgment shall be entered for APAC-Kansas, Inc. and against BSC Steel, Inc. in the amount of $275,756.35 in principal, plus $155,292.61 in prejudgment interest which continues to accumulate daily, plus costs and attorney's fees.

IT IS FURTHER ORDERED that the motion for partial summary judgment of American Riggers Supply, Inc. (Doc. # 163) be hereby granted.  Judgment shall be entered for American Riggers Supply, Inc. and against BSC Steel, Inc.; W & W Steel, LLC and Liberty Mutual Insurance Company on Count VI of American Riggers Supply, Inc.'s complaint in intervention in the amount of $170,572.00.

**IT IS SO ORDERED.**

Dated this 26th day of February, 2015, at Topeka, Kansas.


s/RICHARD D. ROGERS
Richard D. Rogers
United States District Judge


26